UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| EDWARD ALMONTE, | Civil No. 05-98 (ADM/SRN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| LISA J.W. HOLLINGSWORTH, | |
| Respondent. | |

Edward Almonte, Federal Correctional Institution - Petersburg, P.O. Box 1000, Petersburg, Virginia, 23804, Petitioner, pro se.

William H. Koch, Assistant United States Attorney, Suite 600, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Edward Almonte for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He claims that he has been wrongly deprived of 27 days of good-time credit, and that the Bureau of Prisons, ("BOP"), is therefore intending to keep him in federal custody beyond his proper release date. Respondent has filed an answer, (Docket Nos. 7-10, 13), contending that the petition should be dismissed.

The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner is currently serving a 168-month federal prison sentence, which was imposed by the United States District Court for the Southern District of New York, following Petitioner's conviction for federal drug law violations. The present action stems from an incident that occurred while Petitioner was serving his sentence at the Federal Prison Camp in Duluth, Minnesota, ("FPC-Duluth").[1]

On January 6, 2004, at around noon, prison officials at FPC-Duluth discovered evidence of a bloody altercation that had recently taken place in a restroom near the prison gymnasium. Some of the restroom's furnishings were damaged, and there was fresh blood on the floor and elsewhere. Prison officials immediately began to search for injured inmates who might have been involved in the fight that apparently had just occurred.

At about the time when the restroom fight was discovered, Petitioner arrived at a prison carpentry shop, and went to a tool room where he sometimes worked. A correctional official named Gilbertson was on duty, and he allowed Petitioner to enter the tool room. Shortly after Gilbertson walked away from Petitioner, he heard a loud noise. Petitioner cried out, apparently in pain, and Gilbertson returned to him to find out what had happened. Petitioner claimed that a saw had fallen on his right hand. Gilbertson brought Petitioner to the prison health services department, so he could get his hand examined and treated.

---

[1] Petitioner was later transferred to the Federal Correctional Institution in Sandstone, Minnesota, and he was incarcerated there when he brought this action. He recently informed the Court that he is presently serving his sentence at the Federal Correctional Institution at Petersburg, Virginia. (Docket No. 15.)

Although Petitioner did not have any blood on his injured hand, Gilbertson noted that he had some blood spatters on his face. (Declaration of Harrison Dudley, [Docket No. 9], p. 1, ¶ 8.) When Petitioner arrived at the health services unit, other blood spots were found on his shoes, ankle, and the knee area of his long underwear. Petitioner was later taken to a local hospital for treatment of a broken finger in his right hand. A physician's assistant at FPC-Duluth suggested that Petitioner's hand injury might have been caused by boxing or fighting. (Id.)

Soon after the first evidence of the fight was discovered, an inmate's shirt with blood stains was found in the prison gymnasium. Part of the identification tags had been removed from the shirt, but the letters "E. A" remained, as well a partial prisoner registration number – "089." Those identification fragments matched Petitioner's name, i.e., "E. Almonte," and his prisoner identification number, "08915-052."

The full investigation of the fight was not completed until March 16, 2004. On that date, an "incident report" was prepared by one of the investigators, Steve Akervik, a Special Investigation Supervisor (SIS) Technician. A copy of the incident report was delivered to Petitioner later that same day. The matter was then referred to a Unit Disciplinary Committee, ("UDC"), for further proceedings. (Id., ¶ 3.)

UDC hearings normally are conducted within three days after an incident report is completed. In Petitioner's case, however, the Warden at FPC-Duluth determined that the UDC hearing should be delayed, because certain prison staff members were not available due to scheduling issues. Thus, the UDC hearing was not actually held until March 23, 2004, which was seven days after the incident report was completed. The UDC concluded that

because of the seriousness of the charged offense, (fighting with another inmate), the matter should be referred to a Disciplinary Hearing Officer, ("DHO"), for a further hearing.

Prior to the DHO hearing, Petitioner was advised that he could ask for a prison staff representative to assist him at the hearing. Petitioner requested assistance from James Stern, and that request was granted. It appears that Petitioner gave Stern a list of witnesses, and a list of questions for those witnesses, and Stern obtained responses from six of the eight witnesses that Petitioner requested. Respondent contends that the other two witnesses were "repetitious." (Respondent's Response [etc.], [Docket No. 7], p. 7.) Neither party has provided any meaningful insight into what evidence (if any) those two witnesses might have provided.

The DHO hearing was conducted by DHO Harrison Dudley on March 30, 2004. The DHO considered the incident report, (with supporting documents and photographs), the written witness questions and answers, and a written statement submitted by Petitioner. Six of Petitioner's requested witnesses attended the hearing, and the DHO considered their testimony, as well as oral statements made by Petitioner and his staff representative. (Dudley Decl., ¶ 7-9.)

The DHO concluded that "some evidence existed establishing that petitioner committed the prohibited act of Fighting, Code 201, a violation of BOP rules." (Id., ¶ 9.) As punishment, Petitioner was placed in disciplinary segregation for 20 days, he forfeited 27 days of good-time credits, and he was transferred to a different prison.

After exhausting his administrative remedies, Petitioner commenced the present

habeas corpus action.[2]   His petition was properly filed in this District, because he was confined here in Minnesota when he initiated this action.  Petitioner is seeking full restoration of his 27 days of lost good-time credit, based on three grounds:

(1) that his disciplinary proceedings were procedurally defective, because the UDC was not conducted within three days after the incident report was completed;

(2) that his DHO hearing did not satisfy the procedural requirements of due process; and

(3) that the evidence does not support the DHO's decision.

For the reasons discussed below, the Court finds that Petitioner is not entitled to habeas corpus relief on any of the three claims listed in his petition.

## II. DISCUSSION

### A. Delayed UDC Hearing

Petitioner initially contends that his lost good-time credits should be restored because his UDC hearing was not conducted within three days after the incident report was completed. This argument is grounded on the BOP regulation found at 42 C.F.R. § 541.15(b), which

---

[2] Respondent has suggested, (rather half-heartedly, it seems), that Petitioner may not have satisfied the exhaustion of administrative remedies requirement, because two of his administrative appeals were "erroneously rejected" due to "an administrative error in the receipt of Petitioner's appeals." (Respondent's Response [etc.], p. 2.)  The Court finds that Petitioner did everything that could reasonably be expected to exhaust his administrative remedies in a proper and timely manner, and he should not be deprived of an opportunity to have his habeas claims decided on the merits because of the BOP's "administrative error." Therefore, Petitioner is deemed to have exhausted his administrative remedies for purposes of this action.  See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999).

5

states that –

> "Each inmate so charged is entitled to an initial hearing before the UDC, <u>ordinarily</u> held within three work days from the time staff became aware of the inmate's involvement in the incident. This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays." (Emphasis added.)

Petitioner contends that the three-day period prescribed by § 541.15(b) is an absolute maximum, and that any disciplinary sanctions imposed against him in the present matter should be vacated, because his UDC hearing was not conducted within the three-day time frame described in the regulation. This argument must be rejected.

It is apparent on the face of the regulation that the three-day provision does not establish an inviolable mandate. The regulation states that the UDC hearing "<u>ordinarily</u>" should be conducted within three days. The use of the word "ordinarily" clearly indicates that the three-day provision is a guideline, not an absolute edict. Nothing in the regulation itself suggests that a disciplinary proceeding should be nullified if prison officials do not comply with the three-day guideline.

Even if § 541.15(b) did not include the word "ordinarily," Petitioner still would not be automatically entitled to a writ of habeas corpus simply because his UDC was not conducted within the three-day period described in the regulation. To warrant habeas corpus relief, Petitioner would have to show that a violation of the three-day provision of § 541.15(b) is <u>constitutionally</u> significant. See <u>White v. Henman</u>, 977 F.2d 292, 295 (7th Cir. 1992) ("the question is not whether some employee of the United States goofed up but whether the error yields unconstitutional or otherwise illegal custody").

Habeas relief is not available for violations of federal administrative regulations unless

the regulations "are themselves essential components of due process of law." Kramer v. Jenkins, 806 F.2d 140, 142 (7th Cir. 1986) (per curiam)  To satisfy the constitutional requirement of due process, a prison disciplinary action that could result in the loss of good-time credits must provide only the simple procedural safeguards prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), (which are discussed more fully below).  Nothing in Wolff, or elsewhere, suggests that § 541.15(b)'s three-day provision has any constitutional significance.  It is therefore not surprising that federal courts have consistently rejected prisoner arguments based on alleged violations of that provision.  See e.g., Howard v. Beeler, No. 90 C 271 (N.D.Ill. 1992), 1992 WL 67830 at *2-3; Moses v. Bledsoe, No. CIV.A.1:03CV149 (N.D.W.Va. 2004) 2004 WL 3317657, aff'd, 124 Fed.Appx. 787 (4th Cir. 2005) (unpublished opinion); Rashid v. Yates, No. CIV1:CV-03-805 (M.D.Pa. 2005), 2005 WL 1277825.

Furthermore, a habeas petitioner cannot prevail on a due process claim without showing that he suffered some actual prejudice as a result of the alleged deprivation of his right to due process.  White, 977 F.2d at 295 ("[t]o show that 'the custody' – and not simply the custodian – violates the law, the prisoner must at a minimum trace the prejudicial effect of the [custodian's] error").  See also Griffin v. Winn, No. CIV.A. 01-40151-WGY (D.Mass. 2002), 2002 WL 378427 at *3-4 (rejecting federal prisoner's habeas claims based on alleged non-compliance with BOP disciplinary hearing rules because prisoner was unable to show any actual prejudice).  As the court explained in Howard:

> "Whether the delay in a prison disciplinary hearing violates due process is a function of whether the delay in some way prejudiced the prisoner's ability to present his case... [Citations omitted.]  Because [the prisoner] alleges no

7

prejudice here, his allegations regarding the delay in his hearing before the UDC do not state a claim for relief."

1992 WL 67830 at *3.

In this case, Petitioner has offered no reason to think that the outcome of his disciplinary proceedings might have been different if his UDC had been conducted on the third day, rather than the seventh day, after the incident report was completed. He has not shown that he was prejudiced in any way as a result of the delay in conducting the UDC hearing. For this additional reason, Petitioner's first ground for relief must be rejected.

### B. The DHO Hearing

In his second ground for relief, Petitioner raises several objections to the manner in which his DHO hearing was conducted. He contends that (i) the DHO failed to disclose two pieces of documentary evidence – a medical report, and a report describing the bloody shirt found in the prison gymnasium; (ii) the DHO did not let the staff representative call all requested witnesses, or adequately question the witnesses who were available; (iii) the DHO did not provide adequate time to prepare a defense; and (iv) the DHO improperly questioned some of the witnesses.

A prisoner facing a loss of good-time credits is not entitled to the full panoply of procedural safeguards that attend a criminal prosecution. Wolff, 418 U.S. at 556. To satisfy the constitutional requirement of due process, a prison disciplinary action resulting in a loss of good-time credits must satisfy only the simple procedural requirements prescribed in Wolff. Those requirements are (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate

resolution of the charges. Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.), cert. denied, 537 U.S. 870 (2002). See also Allen v. Reese, 52 Fed.Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision), cert. denied, 540 U.S. 849 (2003).

Due process also requires that there must be "some evidence" supporting the disciplinary determination. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). See also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record").

It also bears repeating that a habeas petitioner cannot prevail on a due process claim without showing that he suffered some actual prejudice as a result of the alleged procedural deficiencies. White v. Henman, supra. See also, Griffin-Bey v. Bowersox, 978 F.2d 455, 456 (8th Cir. 1992) (prisoner's due process objection to prison disciplinary proceedings not actionable, because prisoner failed to show that outcome would have been different if not for the alleged procedural errors).

In this case, the record does not support Petitioner's various due process claims pertaining to his DHO hearing. The record shows that he was afforded at least the minimal procedural benefits prescribed by Wolff. He was given written notice of the charges against him, he was given a hearing and an opportunity to present evidence, and he was given a

9

written summary of the DHO's findings. However, Petitioner still contends that he was denied due process because of several alleged procedural errors.

First, Petitioner contends that he should have been given the medical report pertaining to his visit to the health care unit on the day of the fight. He claims that this report would have shown that he had a small cut on his forearm, which could have explained the blood found on his clothing. He further claims that the report would have contradicted the DHO's statement that his (Petitioner's) "credibility was lessened" by his "misrepresentation" that he had a cut on his wrist that may have explained the blood found on his clothing. However, the medical report at issue does not specifically refer to a cut; it merely says that Petitioner's right forearm was "pinched." (Petitioner's Response [etc.], Exhibit A.) Furthermore, even if the injury did involve a cut, there is nothing in the record to suggest that the cut was severe enough to explain all of the blood found in all the various places on Petitioner's apparel. In any event, the Court finds no reason to believe that Petitioner would have been exonerated at the DHO hearing, if not for the alleged withholding of the medical report at issue.

Petitioner also claims that he should have had direct access to the prison staff report about the bloody shirt found in the gym. He contends that this report could have exonerated him, because the initials "E. A," and the partial prisoner number, "089," which were found on the shirt, cannot link the shirt to him. According to Petitioner, "under BOP Policy, a federal prisoner's institutional clothing depicts the prisoner's 'last name first,' followed by his first name or initial, and registration number." (Petitioner's Response [etc.], [Docket No.   ], p. 6.) Therefore, Petitioner argues, the letters found on the bloody shirt could not be his initials, because the "E." in his first name would not precede the "A" in his last name, as those letters

10

appeared on the bloody shirt. He further argues that the "089" could not refer to him, because, given the BOP's standard "tagging" procedures, the "089" had to be the <u>last</u> three numbers of the shirt owner's registration number, whereas "089" are the <u>first</u> three numbers of Petitioner's registration number.

However, the report at issue shows that the letter "E" found on the tag on the bloody shirt was followed by a period, while the letter "A" was not. This suggests that shirt belonged to someone whose name was "E. A_____," which, of course, could be Petitioner, (E. Almonte). While it is not entirely clear that the partial registration number found on the bloody shirt connects the shirt to Petitioner, the Court is satisfied that the presence of the first three numbers of Petitioner's registration number, ("089"), combined with the initials "E.A," causes the bloody shirt to be far more incriminating than exculpatory. Therefore, the Court again finds no reason to believe that the outcome of the DHO hearing would have been different if Petitioner had obtained a copy of the report at issue before the hearing.

Petitioner's remaining objections to the DHO hearing are equally unavailing. Petitioner contends that he was not allowed to solicit testimony from all of his requested witnesses, and that his staff representative was not allowed to adequately examine the witnesses who were available. However, the record shows that six of Petitioner's eight requested witnesses did provide evidence, and he has not refuted Respondent's contention that the two remaining witnesses were "repetitious." In addition, Petitioner has offered nothing to support his conclusory assertion that his staff representative was not permitted to adequately examine his witnesses. Nor has Petitioner explained why he and/or his staff representative needed more time to prepare for the hearing, or why additional preparation time supposedly would have

changed the outcome of the hearing. Thus, the Court can find no prejudice associated with any of these claims.

Petitioner further contends that he was denied due process because the DHO independently examined some of the witnesses. This argument is plainly unsustainable. An administrative decision-maker does not have to be a wholly inactive observer in order to satisfy the objectives of due process. In fact, even federal judges quite commonly – and properly – question witnesses during trials. See United States v. Scott, 26 F.3d 1458, 1464 (8th Cir.) ("[t]he role of a trial judge is more than a 'mere moderator' of the trial, and it includes the prerogative, and sometimes the duty, to elicit facts deemed necessary to a clear presentation of the issues"), cert. denied, 513 U.S. 1019 (1994); United States v. Dreamer, 88 F.3d 655, 659 (8th Cir. 1996) ("[a] district judge may ask questions to clarify the testimony of a witness"). Hearing officers at less formal administrative hearings are undoubtedly authorized to question witnesses as well.

In sum, the record shows that Petitioner was afforded the basic procedural safeguards listed in Wolff, which is all the law requires. Petitioner has not shown that any of the alleged procedural deficiencies of his DHO hearing were constitutionally significant, and he has not shown any specific prejudice that is directly attributable to any of those alleged deficiencies. Therefore, Petitioner's second claim for relief must be denied.

C. Sufficiency Of The Evidence

In his last claim, Petitioner contends that the evidence does not support the DHO's conclusions. It is well-established, however, that federal courts will not normally re-examine the substantive decisions reached by prison disciplinary officials. The Supreme Court has

held that the findings of a prison disciplinary official should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record." Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). The Court further explained in Hill that

> "[t]his standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, <u>the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board</u>."

Id. at 455-56 (emphasis added).

According to Hill, the findings of a prison disciplinary official cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. As long as there is at least some evidence of guilt, and the disciplinary action is not simply arbitrary, the requirements of due process are met.

In the present case, there is "some evidence" to support the DHO's decision. Petitioner does not deny that a fight occurred, and there is ample evidence suggesting that he may well have been a participant. Petitioner suffered a hand injury at almost exactly the same time that the fight occurred, and no one actually saw how that injury occurred. At least one medical witness believed that Petitioner's injury could have resulted from a fight. Furthermore, blood was found on Petitioner, which does not appear to be fully attributable to his own injuries. The bloody shirt found in the gym, which bore an identification tag that included Petitioner's initials and part of his registration number, provided some further

evidence suggesting Petitioner's involvement in the fight.

While the evidence cited in the DHO's decision may not furnish irrefutable proof of Petitioner's involvement in the fight, it does satisfy the "some evidence" requirement. Because the DHO's decision in Petitioner's case is supported by some evidence, it cannot be overturned by a writ of habeas corpus. Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir.) (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is based on some evidence in the record), cert. denied, 510 U.S. 997 (1993).

### III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner is not entitled to a writ of habeas corpus on any of the three claims advanced in his petition. It will therefore be recommended that this action be dismissed with prejudice.

### IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docket No. 1), be DISMISSED WITH PREJUDICE.

Dated: December 7, 2005

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 22, 2005**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.